Cooper v. Scyoc.

---

## COOPER, Respondent, v. SCYOC, Appellant.

**St. Louis Court of Appeals, February 16, 1904.**

1. **ABUSE OF JUDICIAL PROCESS: Garnishing Exempt Wages.** An action for abuse of judicial process will lie against an execution creditor who wrongfully, maliciously and without probable cause, repeatedly garnishes the exempt wages of his debtor.

2. **EVIDENCE: Return of Officer: Garnishment.** The return of the constable, indorsed on the notice of garnishment which was served on the garnishee, is original evidence of the fact of service, and it is unnecessary to show an indorsement of the fact on the execution.

3. **ABUSE OF JUDICIAL PROCESS: Garnishing Exempt Wages: Claiming Exemption: Instruction.** In an action for abuse of judicial process in garnishing plaintiff's exempt wages, an instruction which told the jury that plaintiff was the head of a family, and his employer was not chargeable as garnishee on account of wages due him for the last thirty days' service; and defendant had no right to summon the garnishee on account of such wages, properly declared the law, there being no evidence that plaintiff had waived his right to claim his exemptions.

4. ————: ————: **Exemplary Damages.** Such an action is one in which exemplary damages may be allowed in the discretion of the jury where the abuse of process was malicious.

5. ————: ————: **Loss of Time: Remote Cause.** But plaintiff can not recover damages for loss of time by reason of being discharged by his employer and thrown out of employment, on account of the repeated garnishments; the cause of the discharge is too remote.

6. ——: ——: **Creditor and Officer Jointly and Severally Liable.** The officer who serves the writ and the execution creditor who directs his action, are jointly and severally liable for abuse of the process of garnishment.

Appeal from Hannibal Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*E. W. Nelson* and *Roy & Hays* for appellant.

(1) There is no cause of action stated in the petition. The defendant had the right to order constable to garnish the railroad company. It was not for execution creditor to determine debtor's right to exemption. It is for the debtor to say whether he will waive the right or insist upon it. Osborne v. Schutt, 67 Mo. 712; State v. Koch, 47 Mo. App. 269. (2) The protection of the debtor is cast upon the constable, who is bound to notify the debtor of his right to make his selection and claim, and the justice has no jurisdiction to try the question of exemption, but the exemptions must be allowed by the constable or sheriff. State ex rel. v. Barrada, 57 Mo. 562; State ex rel. v. Barnett, 96 Mo. 133. (3) And this is true in case of garnishment of wages. Howland v. Railroad, 134 Mo. 474. (4) Before summoning the garnishee the constable must notify execution debtor of his rights to exemption. State ex rel. v. O'Neil, 78 Mo. App. 25; State use of Maher v. Sontag, 15 Mo. App. 312; Revised Statutes, sec. 3163; Whitten v. Bennett, 30 C. C. A.; Jeffery v. Robbins, 73 Ill. App. 353; Bonney v. Kins, 103 Ill. App. 601. (5) The court should have instructed a verdict for defendant. There is no proof of any garnishment. The only way in which the garnishment can be proved is by the return of the constable on the writ of execution. And the executions in evidence had no return except that of *nulla bona,* and the so-called returns on the summonses

to the garnishee did not refer in any way to the execution, nor did the summonses themselves, and they did not constitute a sufficient return to show garnishment. Hackett v. Gihl, 63 Mo. App. 453; Dunn v. Railway, 45 Mo. App. 29; Grocer Co. v. Carlson, 67 Mo. App. 179; Marshall v. Schricker, 63 Mo. 309. (6) Instructions Nos. 7 and 8 are contradictory of themselves and are misleading on the subject of punitive damages. They tell the jury that in case they find for the plaintiff they should allow, first, actual damages, and second, in addition thereto may allow punitive damages. By the plainest rules of construction the word should applies to both kinds of damages. This would naturally leave the jury in doubt as to whether the should or might find punitive damages, was an error. Legg v. Johnson, 23 Mo. App. 590; Staples v. Town of Canton, 69 Mo. 592. (7) The instruction should have been so drawn as to leave to the jury the free exercise of their discretion as to the allowance of exemplary damages. Nicholson v. Rogers, 129 Mo. 136; Carson v. Smith, 133 Mo. 617.

*F. L. Schofield* and *G. W. Whitecotton* for respondent.

(1) A perfect cause of action is stated in the petition. It is abundantly supported by both reason and precedent. It avers wrongful acts done or procured to be done by defendant, willfully and without just cause, with malice express, and resulting in injury and damage. In such case it were a reproach to any system of remedial jurisprudence if it afforded no redress. But analogies and precedents for the exact case are not wanting. Nix v. Goodhill, 95 Iowa 282; s. c., 58 Am. St. 434. A cause of action arises where a person maliciously procures the discharge of another regardless of means used. 1 Joyce on Damages, 509. (2) An action has always been held to lie against an officer for seizing property which he knew to be exempt from execution.

Freeman on Executions, secs. 211-215; Tynd v. Pickett, 7 Minn. 184; Cronfeldt v. Arrol, 50 Minn. 327; Coleman v. Ryan, 58 Ga. 132; Harrington v. Smith, 14 Colo. 378. (3) And the execution creditor is equally liable with the officer if he directs the levy, and he is a co-trespasser and is either jointly or separately liable. 12 Am. and Eng. Ency. Law (2 Ed.), 250; Atkinson v. Golcher, 23 Ark. 101; Spencer v. Brighton, 49 Me. 326; Bonnell v. Dunn, 29 N. J. L. 435; Matthew v. Redwine, 25 Miss. 99. (4) Even in cases of malicious attachment it is not necessary that the defendant should have participated in the execution of the attachment process. Responsibility attaches to him by making the affidavit maliciously, whereby the machinery which accomplished the wrong was set in motion. Walser v. Thies, 56 Mo. 89. And the execution creditor is liable even where the debtor has failed to claim his exemption, if he had previously claimed the property as exempt from a former seizure on the same judgment. Haswell v. Parsons, 15 Cal. 266.

### STATEMENT.

On June 15, 1899, defendant herein recovered a judgment of fourteen dollars and twenty cents debt, and ten dollars and eighty cents costs against plaintiff herein, before D. S. Scott, a justice of the peace of Mason township, in Marion county, Missouri. On the same day an execution, returnable in ninety days, was issued on said judgment and delivered to the constable of Mason township. The execution was served on Cooper, the defendant therein, but was not satisfied, and was renewed by the justice of the peace on September 13, 1899, again on December 12, 1899, again on March 12, 1900, and on June 14, 1900, was returned wholly unsatisfied, no goods or chattels of defendant having been found whereon to levy the same. On the fourth

day of December, 1900 by order of Scyoc, an alias execution returnable in ninety days was issued on the judgment, and delivered to the constable of Mason township. This alias execution was renewed every ninety days thereafter down to the day of the filing of the petition herein (February 24, 1902), and was in the hands of the constable when this suit was commenced. The suit is to recover actual and punitive damages for alleged malicious abuse of judicial process issued and renewed on the judgment of June 15, 1899, and is in two counts. The first count is for alleged malicious abuse of process by the steps that were taken by the constable and the plaintiff on the first execution and the several renewals thereof. The second count is for malicious abuse of the process under the alias execution and the several renewals thereof.

The answer was a general denial.

The evidence is that Cooper, the plaintiff, was a mechanic and was, when the judgment before the justice of the peace was rendered, in the employ of the Hannibal & St. Joseph Railroad Company (lately taken in by the Burlington Railroad Company) and worked in the shops of said company at Hannibal, Missouri, and continued to work therein until he was subsequently discharged by the Burlington Railroad Company. The average of his wages was about fifty-two dollars per month. He had a wife and four children, and a dwelling house, in which he lived with his family, mortgaged for all it was worth. He was possessed of considerable less than three hundred dollars in personal property, and depended solely upon his wages for the support of himself and family. Under the rules of the railroad company its employees were paid from the eleventh to the sixteenth of each month for the prior month's earnings, so that the railroad company, after the first month's employment, retained in its possession or kept back two weeks' wages of its employees. This rule was observed in making payments to Cooper while he was in the em-

ploy of the companies. When the constable served the original execution on Cooper, he claimed his right of exemption and furnished the constable with a sworn schedule of his property and the value thereof, showing that it was worth considerably less than three hundred dollars. By direction of Scyoc, the constable garnished the railroad company. The fact of the service of garnishment was not at any time indorsed on the execution and for this reason defendant objected to any evidence tending to show that the railroad company had been garnished. This objection was overruled by the court, to which ruling the defendant objected and excepted. That this matter may be fully understood, we will set out in full what was done under the defendant's orders to the constable to garnish the railroad company. The following notice or summons of garnishment was first read in evidence:

"D. R. Scyoc, plaintiff, v. C. F. Cooper, defendant.

"Attachment before D. S. Scott, justice of the peace, Mason township, Marion county, Missouri.

"To the Hannibal & St. Joseph Railroad Co., garnishee:

"You are notified that I attach, in your hands, as the property and effects of said C. F. Cooper, the defendant in the above entitled cause, all the debts due from you to the said defendant, or so much thereof as shall be sufficient to satisfy the debts and interest or damages and costs in the above entitled action. And also that I do attach in your hands, all goods and chattels, money or evidence of debt, belonging to and being the property of said defendant, C. F. Cooper.

"And to be and appear before D. S. Scott, a justice of the peace within and for the township of Mason, in the county of Marion, at his office in said township, on the eighteenth day of July, 1899, at seven o'clock, a. m., then and there to answer such interrogatories as may be put to you by said justice.

"This tenth day of July, 1899.
(Signed)                    "F. K. GREEN,
               "Constable of Mason township."

On the back of this notice or summons was indorsed the following return, also read in evidence:

"I hereby certify that I delivered a true copy of the within summons to H. M. Kerr, the general agent of the H. & St. J. R. R. Co., at Hannibal, on the tenth day of July, 1899, in the city of Hannibal, county of Marion, and State of Missouri.

                       "F. K. GREEN,
                            "Constable."

The garnishee appeared before the justice and made the following answer which was offered in evidence:

"D. R. Scyoc, plaintiff, v. The Hannibal & St. Joe R. R. Co., garnishee of C. F. Cooper, defendant.

"Now comes the above named railroad company, garnishee herein, and for its answer states:

"1st. That at the time of the service of the garnishment upon it herein it did not have, has not since had, nor has it now, in its possession or under its control any property, money or effects of the said defendant except as herein stated.

"2d. That at the time of the service of the garnishment upon it herein it did not owe the said defendant any money nor does it owe him any money now except as herein stated.

"3d. That this garnishee owes and is indebted to the aforesaid defendant in the total sum of thirty-six dollars and forty cents ($36.40) which said sum of wages earned by said defendant while in its employ and is now due and unpaid.

"4th. That of the aforesaid amount of money so due and owing to defendant all thereof, to-wit, the sum of thirty-six dollars and forty cents is due from this garnishee to defendant as and on account of wages earned by the defendant for and during the last thirty

days service in the employ of this garnishee. That said employee (the defendant herein) is the head of a family and a resident of the State of Missouri, and that therefore by virtue of the provisions of section No. 5220, of the Revised Statutes of Missouri, 1889, this garnishee is not in the cause chargeable as garnishee on account of said sum of wages so due from it to the defendant for the last thirty days' service of defendant in its employ.

"Wherefore, having fully answered, garnishee asks to be discharged with its costs and to be allowed a reasonable fee for this answer, as provided by sec. 5238, R. S. 1889.

"HANNIBAL & ST. JOSEPH RAILROAD COMPANY,

"By SPENCER & MOSSMAN, its General Solicitors.

"Filed, July 18, 1899.

"D. S. SCOTT, Justice of the Peace."

The evidence of Scyoc is that he gave the constable a standing or running order to continue summoning the defendant as garnishee. Under these instructions, on each execution and on each renewal of the original execution, and on each renewal of the alias execution, a like notice or summons of garnishment was served on the railroad company, a like return was made thereon, and a like answer was filed by the garnishee as on the original execution.

The docket entries of the justice show a dismissal of the garnishment by the constable, on August 10, 1899, and on August 21, 1899, that Cooper gave notice and claimed his statutory rights to his wages as exempt from execution or garnishment. On September 12th, the docket shows a release of the garnishment by the constable. It further shows that on March 19, 1899, Cooper again claimed his exemption rights and the garnishee was released by Scyoc. The docket shows that on April 12, 1900, December 9, 1901, January 10, 1902, and February 11, 1902, garnishments were dismissed by

order of the plaintiff and in each instance a re-summons was ordered to be issued and served on the railroad company as garnishee. The total cost of the several garnishments was $39.65.

Cooper testified that he paid his attorney twenty-five dollars to represent him before the justice in the garnishment cases. When the railroad company had been garnished the third time, Cooper went to Scyoc and offered to pay him the face of the judgment ($14.20) but Scyoc refused to receive the money, unless Cooper would pay all the costs and threatened then to pursue the railroad company with garnishment until it would either compel Cooper to pay the judgment or discharge him. On May 12, 1900, Scyoc wrote Mr. Crance, superintendent of the railroad as follows:

"Hannibal, Mo., May 12, 1900.
"Mr. S. E. Crance,
"St. Joe, Mo.
"Dear Sir: We write you again concerning Mr. Cooper in your employ who owes us a bill and refused to pay. We have garnished his wages several times but to no result. We ship by the Hannibal & St. Joe and K. Line altogether. That we are good patrons of your road can be found out by writing your agent here. But we can not longer patronize people who keep in their employ parties refusing to pay just and honest bills.
"Please give this matter your immediate attention.
"Yours truly,
"D. R. Scyoc & Co."

*George M. Harrison*, attorney for Cooper before the justice of the peace, testified as follows:

"I am a lawyer and live in Hannibal; have practiced law since 1867. I was Cooper's counsel in case before Justice Scott in which judgment was obtained. I represented Cooper in all the garnishment cases, nine in all, and charged him $5 in each garnishment. I had several talks with Scyoc about the matter. During that

time Cooper was out of employment about four or five weeks by leave of the company. Scyoc said to me at Craft Hotel, 'Well, by God, I've got him, Cooper is out.' I said, 'But Cooper told me that he had laid off to repair his house.' 'No,' he says, 'That ain't true, I have got him, I knew I would get him, I will have him discharged for good.' Some time in November, Scyoc said to me in reference to Cooper, 'I'm after him again, I will keep after him until I get him.' He told me at one time that he had written the railroad company that if they did not discharge Cooper he would withdraw his patronage from the road.''

*W. L. Fitzgerald* testified as follows:

''I am general agent of the Burlington Route, with offices at Hannibal, and have been since August, 1900. I had in my possession a letter written by Scyoc to Mr. Crance, superintendent of the road, and I talked with Scyoc. He said we would either have to make the man pay the bill or discharge him or lose his business, and he got rather abusive to me and the railroad and Mr. Cooper. He said Cooper was a damn thief and that he proposed to get his money or he would make him and the company regret it. I told him I had the letter he had written to Crance. I stated to Scyoc that it would not be policy for the company to employ a confirmed dead-beat, but I believed Cooper's attorneys had advised him not to pay the bill and we thought it was not a case where we ought to interfere and that our superintendent had instructed me to advise Mr. Scyoc, and on that account I had the talk with Scyoc. I am a solicitor of business, and I tried to explain it to him so he would see it in our light. I did not succeed. He stated he would show the road whether they could keep a dead-beat in their employ and not lose money by it. He said he thought if I was so damned smart that I could come here and run the railroad and its customers he would show us.''

*I. N. Wilbur* testified as follows:

"I am master mechanic of the St. L., K. & N. W. R. R. Co., and have been since 1896. The plaintiff Cooper, was in our employ until he was relieved, February 22, 1902. I was master mechanic of H. & St. Joe before it was merged. It is all C., B. & Q. I gave Mr. Shryock, Cooper's foreman, orders to discharge Cooper for the reason that he was garnished so often. It made so much annoyance for the company. He was garnished by Scyoc nine times. We had no other reason for discharging him."

On February 22, 1902, Mr. Wilbur wrote the following letter:

"Hannibal, Mo., Feb. 22, 1902.
"Mr. G. M. Shryock, M. C. B.,
      "City.

"Dear Sir: C. F. Cooper has had the ninth garnishment served against him by D. R. Scyoc, and our general superintendent thinks that we have favored him about as long as we can consistently. It is therefore necessary to relieve him from the service. Please notify Mr. Cooper accordingly and say to him that as soon as the garnishment is released he can call at my office and get a check for the amount due him.

                    "Yours truly,
                         "I. N. WILBUR."

On the same day Cooper received the following notice of his discharge:

"Hannibal, Mo., Feb. 22, 1902.
"Mr. C. F. Cooper,
      "Hannibal, Mo.

"Dear Sir: Next attached please find copy of Mr. Wilbur's letter to me this date, which explains itself. Please turn in to your foreman any company tools that you now have.

                    "Yours truly,
                         "G. M. SHRYOCK."

Plaintiff testified that Scyoc knew he had a family, knew of his financial condition and knew that it took all his wages to support himself and family; that after his discharge it was six weeks before he found any employment and that his employment had been irregular, that he was frequently out of work and had not earned as much per annum as when working for the railroad company. Scyoc, in his own behalf, testified that he thought he could get the two weeks' wages held back by the company from Cooper, but found out that he could not; that he knew Cooper had claimed his exemption, but thought by garnishing the railroad company from time to time they would make Cooper pay up. He denied that his object was to force the railroad company to discharge Cooper if he did not pay the judgment.

Defendant moved the court to instruct the jury that on the evidence plaintiff was not entitled to recover. This instruction was refused and the issues were submitted to the jury on the evidence and instructions given by the court. The jury found the issues for the plaintiff on both counts of the petition. On the first they assessed his actual damages at twenty-five dollars and punitive damages at three hundred dollars, and on the second count assessed the actual damages at one hundred and seventy-five dollars and punitive damages at three hundred and forty-one dollars. Timely motions for new trial and in arrest of judgment were filed by the defendant. These were overruled and defendant appealed to this court.

BLAND, P. J. (after stating the facts as above.) —
1. Should the plaintiff have been nonsuited at the close of his evidence? The evidence is so clear and convincing as to leave no reasonable doubt that the defendant maliciously directed the repeated service of summons on the railroad company as garnishee, when he had no reasonable ground to believe that anything could be collected from the railroad company as the debtor of the

plaintiff, and knew that the wages of the plaintiff he sought to garnish were exempt from process of garnishment, and that his purpose in having repeated service of summons on the railroad company, as garnishee, was to either force the plaintiff to pay the judgment and costs, or to so annoy the railroad company with process of garnishment as to cause it to discharge plaintiff from its employ. It is contended by the defendant, however, that conceding he was actuated by express malice and that his purpose was to oppress the plaintiff, and that he knew the process of garnishment would not be available for the collection of the judgment or any part of it, yet he had a legal right to order the executions and to have them renewed from time to time and to order the constable to garnish the railroad company, and being possessed of this legal right he can not be mulct in damages for the exercise of it, notwithstanding his motive. If nothing more had been done than the mere suing out of the executions and having them served from time to time on Cooper, and if no attempt had been made to levy upon property exempt, or to garnish wages that were exempt, no right of action could have accrued to Cooper, for it is a well-settled rule in English and American jurisprudence that an action for damages will not lie for the suing out of civil process where neither the person nor the property of the debtor is wrongfully interfered with. See 21 American Law Register, 281 and 353, where the authorities on this point are reviewed at length by John W. Lawson, Esq. But where the property of the defendant has been unlawfully taken by execution, or has been impounded by process of garnishment, and the taking or impounding of it was malicious and without probable cause to believe that it might be lawfully taken or impounded, and the defendant is prejudiced thereby in person or property, it seems to us it furnishes a foundation for an action.

In Churchill v. Siggers, 3 El. & Bl. l. c. 936, Lord Campbell said:

"To put into force the process of the law maliciously and without any reasonable or probable cause is wrongful; and if thereby another is prejudiced in property or person, there is that conjunction of injury and loss which is the foundation of an action on the case. Process of execution on a judgment seeking to obtain satisfaction for the sum recovered is prima facie lawful; and the creditor can not be rendered liable to an action, the debtor merely alleging and proving that the judgment had been partly satisfied and that execution was sued out for a larger sum than remained due upon the judgment. Without malice and the want of probable cause, the only remedy for the judgment debtor is to apply to the court or a judge that he may be discharged, and that satisfaction may be entered up on payment of the balance justly due. But it would not be creditable to our jurisprudence if the debtor had no remedy by action where the person or his goods have been taken in execution for a larger sum than remained due on the judgment, this having been done by the creditor maliciously and without reasonable or probable cause: i. e. the creditor well knowing that the sum for which execution is sued out is excessive, and his motive being to oppress and injure the debtor. The court or judge, to whom a summary application is made for the debtor's liberation, can give no redress beyond putting an end to the process of execution on payment of the sum due, although, by the excess, the debtor may have suffered long imprisonment and have been utterly ruined in his circumstances."

A case in its facts on all fours with the one at bar is Nix v. Goodhill, 95 Iowa 282, where it was ruled that an action will lie against one who maliciously and without probable cause, garnishes the exempt earnings of his debtor, knowing them to be exempt, for the purpose of harrassing the latter's employer, thereby compelling him to pay out of such exempt money in order to avoid discharge. See also Bartlett v. Christhilf, 14 Atl.

(Md.) 518, and 1 Addison on Torts (4 Ed.), 755; Crown-feldt v. Arrol, 50 Minn. 327; Lynd v. Jones, 7 Minn. 184; Harrington v. Smith, 14 Colo. 376.

On principle, an action for wrongfully, maliciously and without probable cause levying an execution upon exempt property of the debtor or garnishing his wages that are exempt, can not be distinguished from an action for maliciously and without probable cause levying an attachment against a debtor or garnishing his exempt property. Both are equally an abuse of judicial process. While a judgment creditor may have executions issued to all counties in the State in which his debtor has property subject to be taken on execution, and while he may with malice in his heart remorselessly pursue the property of his debtor for the satisfaction of his debt with impunity, provided he demands no more than is due, does not direct an excessive levy, or the levy and seizure of property exempt from execution, yet if he directs the officer to seize and levy upon property of the debtor that the law exempts from execution, and the officer makes the levy and seizure, both he and the creditor would be guilty of trespass and be jointly and severally liable to the debtor for the damages. If instead of seizing and levying upon exempt tangible property, the officer, by instructions of the creditor who is prompted by malice, impounds the wages of the debtor that are exempt from garnishment by summoning his employer as garnishee, and the creditor knows that the wages to be impounded are exempt, it seems to us, is as gross an abuse of judicial process as in the case of the levy and seizure of exempt tangible property. While the damages might not be so great as in the case of levy and seizure, yet there would be an abuse of the process, a wrong done and an injury inflicted to the debtor for which the law should afford some remedy. A discharge of the garnishee by the court and the taxing of the costs of the garnishment to the creditor would not be an adequate remedy, in fact, no remedy at all for the wanton

abuse of the process of the court, no remedy to the debtor for his loss of time and expense in defending against the garnishment, nor any compensation to him for the willful and malicious attempt of the creditor to wantonly and wrongfully deprive him of his property under the guise of judicial process. We think the remedy resorted to by the plaintiff in this case is the only adequate one, and that it is sanctioned by law, therefore, we conclude that the petition states a good cause of action and the demurrer to the evidence and motion in arrest of judgment were properly overruled.

2. In respect to the admission of the summonses or notices of garnishment and the returns of the constable thereon as evidence or proof of the fact that the railroad company had been garnished, it is pertinent to remark that the constable was not the plaintiff's agent, that plaintiff had no control over his actions and was not responsible for any omissions of that officer to make proper indorsements on the executions. Section 4042, R. S. 1899, provides that garnishees on an execution issued by a justice "shall be summoned in writing as garnishees," etc. The summonses issued and served on the railroad company conformed to this statutory provision and the constable's return on them showing that they had been served on the garnishee are, it seems to us, the original evidence of the fact of the service of process of garnishment, and that the indorsement of the fact on the execution would be but cumulative evidence.

3. Defendant objected and excepted to the instructions given for plaintiff and especially complains of the following of the series:

"1. If the jury shall believe and find from the evidence that at the time of the delivery to the railroad companies of the notices of garnishment in evidence the plaintiff resided in this State and was the head of a family as explained in instruction No. 2, then the court instructs the jury that plaintiff's employees were not

chargeable as garnishees on account of wages due plaintiff for the last thirty days service next before the service of such garnishments and the defendant had no right to cause plaintiff's employer to be summoned as garnishee on account of such wages due plaintiff or to attempt to subject them to the payment of defendant's judgment.

"3. If the jury shall believe and find from the evidence that defendant caused and directed the Hannibal and St. Joseph Railroad Company to be summoned as garnishee of the plaintiff at the time of the several garnishments in evidence on the original execution in evidence, and that at the time of the service of said garnishments the plaintiff was an employee of the said railroad company working for wages, and that he resided in Marion county, Missouri, and was the head of a family as explained in instruction No. 2, and that at the time of the service of said garnishments the said railroad company did not have in its possession or under its control any property, money or effects of the plaintiff, and did not owe plaintiff any money except such as was exempt from seizure or garnishment as explained in instruction No. 1, or such as was subject to be selected and held by plaintiff as exempt as explained in instruction No. 2, and if the jury shall believe and find from the evidence that the defendant at the time of causing or directing such garnishment to be served had no reasonable or probable cause for believing that said railroad company had in its possession or under its control, property, money or effects of plaintiff, or owed plaintiff money which might lawfully be held on such garnishments and taken in satisfaction of said execution, yet nevertheless, that defendant caused and directed said railroad company to be so summoned as garnishee of plaintiff maliciously and for the purpose of compelling payment of his judgment out of plaintiff's wages, at the same time knowing plaintiff's rights of exemption herein, or that defendant caused or directed said garnish-

ments to be served on said railroad company maliciously and for the purpose of harassing and annoying said company and causing it to discharge plaintiff from his employment unless he paid defendant's judgment, then it will be the duty of the jury to find their verdict for the plaintiff on the first count of the petition in this cause.

"7. If the jury find for the plaintiff on the first count of the petition, they should allow and assess in his favor, first, such actual damages not exceeding one thousand dollars, as under the evidence they may believe he has sustained and which will reasonably compensate him for any reasonable expenses, if any incurred by him, directly occasioned by and resulting from the defendant's acts and conduct as shown by the evidence; and second, and in addition thereto, the jury may also allow and assess against the defendant such further sum by way of exemplary or punitive damages, not exceeding one thousand dollars, as will in their opinion, sufficiently punish the defendant for the wrong and injury done the plaintiff.

"If the jury allow exemplary damages the amount thereof must be separately stated in their verdict.

"8. If the jury find for the plaintiff on the second count of the petition, they should allow and assess in his favor, first, such actual damages, not exceeding one thousand dollars, as under the evidence they may believe he has sustained and which will reasonably compensate him for his loss of time, if any, his expenses, if any, and his loss of employment, if any, directly occasioned by and resulting from defendant's acts and conduct as shown by the evidence; and, second, and in addition thereto, the jury may also allow and assess against the defendant such further sum by way of exemplary punitive damages, not exceeding one thousand dollars, as will in their opinion, sufficiently punish the defendant for the wrong and injury done the plaintiff."

Instruction No. 1 properly declared the law. Plaintiff had claimed his exemption rights at the beginning and continued as the docket of the justice shows, to make his claim of exemption. Even if he had made no claim to his exempt wages, there is no evidence that he waived his right, and without a waiver they could not be subject to the process of garnishment (section 3435 R. S. 1899) nor were the wages due the plaintiff from the railroad company subject to be taken on the execution in any form after he had shown, as he did, that his personal effects and wages did not at any time exceed three hundred dollars. Section 3159, R. S. 1899; Harrington v. Smith et al., 14 Colo. 376. The criticism of the third instruction is answered by the first paragraph of this opinion. It is contended that the seventh and eighth instructions direct the jury to find punitive damages. They do not so read. They leave it to the discretion of the jury to find or not to find such damages, and as the case is one in which punitive damages may be allowed (Coleman & Newsome v. Ryan, 58 Ga. 132; Cronfeldt v. Arrol, 50 Minn. 327), we think the instruction was proper. The further objection to the eighth instruction is that it authorized the jury to assess damages for loss of plaintiff's time after he was discharged by the railroad company. No case has been cited, nor have we been able to find one, where in a case like this the plaintiff was entitled to damages for loss of time by being thrown out of employment. It was not in the power of the defendant to discharge him nor to compel the railroad company to do so. The act of discharging plaintiff was that of the railroad company, not of the defendant. It is true that the evidence shows that the wrongful and malicious conduct of the defendant, in annoying the railroad company by repeatedly summoning it as garnishee, was the cause that moved the company to discharge the plaintiff. The conduct of the defendant was perhaps the remote cause of plaintiff's discharge but it was not his act and for this reason we do

not think defendant is liable for his loss of time directly caused by the act of another with whom defendant was not acting in concert.

4. It is finally contended that it was the duty of the constable to have protected the plaintiff from the unlawful and oppressive use of the execution in his hands and that he erred in serving the summons of garnishment on the railroad company. All this may be granted, yet the fact remains that the constable, in all he did, obeyed the express directions of the defendant, and all he did was expressly ratified by the defendant. In such circumstances the law is well settled that the officer and the defendant are jointly and severally liable for the wrongful acts of the officer. 12 Am. & Eng. Ency. of Law (2 Ed.), p. 250; Duncan v. Frank, 8 Mo. App. 286; Kreher v. Mason, 25 Mo. App. 290; Palmer v. Shenkel, 50 Mo. App. 571; Wetzell v. Waters, 18 Mo. 396.

For error in authorizing the jury to assess damages for loss of time the judgment will be reversed and the cause remanded, unless within ten days from the date of the filing of this opinion plaintiff remits one hundred and seventy-four dollars of the actual damages awarded by the jury on the second count of the petition; if the remittitur be entered as herein provided it is ordered that the judgment shall stand affirmed for the balance of the damages awarded by the jury on both counts. *Reyburn* and *Goode, JJ.,* concur.